[Civ. No. 828. Third Appellate District.—October 17, 1911.]

# SAN FRANCISCO AND SUBURBAN HOME BUILDING SOCIETY, a Corporation, Appellant, v. JOSEPH A. LEONARD et al., Respondents.

FORCIBLE ENTRY—FORCIBLE AND UNLAWFUL DETAINER—RESISTANCE OF DISCHARGED MANAGER OF CORPORATION TO DISPOSSESSION.—Where the manager of a corporation engaged in the business of selling improved real estate was placed in peaceful possession of its property, under a proviso that should occasion arise as specified, the agreement may be terminated by either party upon sixty days' notice and in accordance with its terms the employment was properly terminated by the corporation upon the requisite notice, and the discharged manager forcibly resisted dispossession of its property, and an action was brought against him by the corporation for forcible entry and forcible and unlawful detainer, he was not guilty of a forcible entry, but was properly found guilty of a forcible detainer of the property.

ID.—EFFECT OF TERMINATION BY NOTICE—DISPOSSESSION NOT WORKED IPSO FACTO.—Since the manager's possession arose by virtue of his appointment or employment as manager of the plaintiff's business, if he never himself abandoned or surrendered the possession of the premises so acquired, the effect of the termination of his contract by notice could not work *ipso facto* a change of actual possession, or have the effect to place the lessor into the actual possession thereof, so as to justify a charge by the corporation of a forcible entry into the possession of its property by the manager after the termination of the notice.

ID.—DUTY OF MANAGER NOT TO BE PHYSICALLY ENFORCED.—The duty of the manager to surrender the possession upon the requisite notice cannot be physically enforced by the corporation, and if, under the circumstances, the plaintiff corporation had forcibly driven the manager from the premises, and thus taken possession thereof, it would itself have been guilty of a forcible entry, although, as matter of legal right, it was entitled to the possession.

ID.—PURPOSE OF STATUTE—JUDICIAL ADJUSTMENT.—The purpose for which the forcible entry and forcible and unlawful detainer statute is enacted is to secure a judicial adjustment of differences of that character, and so prevent the parties from attempting to redress their own wrongs.

ID.—REFUSAL TO ALLOW COMPLAINT AMENDED AS TO SPECIAL DAMAGES—ABUSE OF DISCRETION.—Where the original complaint merely alleged general damages, under which the jury allowed no damages, but it appears that two days before the commencement of the trial

plaintiff served a proposed amendment thereto, setting forth special damages resulting from the forcible detention of the property, consisting of one month's rental value of the property detained, delay in receiving the purchase price of houses, the cost of maintaining the plant, the cost of a watchman during the suspension of work, the wages of those compelled to suspend work, and punitive damages for vindictiveness of the manager defendant, and such proposed amendments were presented to the court before the trial began, and there is no objection of surprise on the part of defendants, it is held an abuse of discretion to refuse to allow the amendments.

ID.—STATUTORY GROUND OF PROPOSED AMENDMENTS—CONSTRUCTION OF CODE PROVISIONS — GENERAL POWER OF COURT.—The statutory ground of such proposed amendments was not to conform the pleading to the proofs under section 1173 of the Code of Civil Procedure, which can only be applied after evidence has been adduced, but it rests upon the general power of the court under section 473 of the Code of Civil Procedure to allow amendments to the pleading at any time in furtherance of justice.

ID.—AMENDMENTS IN FURTHERANCE OF JUSTICE—REFUSAL AN ABUSE OF DISCRETION.—Where it clearly appears that the proposed amendments were in furtherance of justice and were seasonably presented at an opportune time, a refusal to allow the same, under section 473 of the Code of Civil Procedure, constituted an abuse of the discretion which that section has committed to the trial court.

ID.—LIBERALITY REQUIRED IN ALLOWING AMENDMENTS.—Great liberality should be shown by the trial court in permitting such amendments to pleadings as will facilitate the production of all the facts bearing upon the question involved in the action, when it can be done without working great delay.

ID.—OBJECT OF JUDICIAL PROCEEDINGS—THEORY OF CODE.—The object of judicial proceedings is to discover all the facts of a case and apply the law; and the theory of the code is that the parties shall each have a reasonable opportunity to present his side of the case.

ID.—SPECIAL PLEADING OF PUNITIVE DAMAGES NOT REQUIRED—RIGHT RESULTING FROM FORCIBLE DETAINER—PROOF OF BAD MOTIVE.—It was not necessary for the plaintiff to plead specially punitive damages. The right to recover the same results from the alleged forcible detainer, which necessarily carries with it the implication that such detainer is from a bad motive, and the precise nature of such motive, and whether it be founded in malice or fraud, or oppression of any sort, may be shown under the general averment that the detainer was forcible. Whether, as matter of fact, statements justifying the imposition of punitive damages are present in the act must depend upon what the proof discloses.

ID.—ALLOWANCE OF EXEMPLARY DAMAGES A QUESTION FOR THE COURT —INSTRUCTION PROPERLY REFUSED.—The allowance of exemplary

damages, under the evidence, is, under the provisions of the Code of Civil Procedure, a question for the court, and not for the jury; and the court properly refused an instruction which would have authorized the jury to allow exemplary damages. The jury are restricted in their finding as to the actual damages, and it rests in the discretion of the court to determine from the evidence whether the actual damages should be trebled as punitive.

ID.—BASIS OF POWER OF COURT TO TREBLE DAMAGES—PROOF OF BAD MOTIVE—PUNISHMENT.—The power specially given to the court to treble the damages is intended to be exercised in those cases only where the evidence discloses that the defendant has committed the tortious act charged against him wantonly, or by oppression, or with malice, express or implied; it is a power to be exercised by way of punishment only.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco, and from an order denying a new trial. G. A. Sturtevant, Judge.

The facts are stated in the opinion of the court.

Chas. F. Hanlon, Pringle & Pringle, and E. K. Taylor, for Appellant.

James G. Maguire, and E. T. Barrett, for Respondents.

HART, J.—The plaintiff is a corporation, organized under the laws of the state of California.

The business of said corporation is that of selling improved real estate, and for that purpose it became the owner of a large number of lots situated in what is designated as "Jordan Tract," in the city of San Francisco. The scheme of the corporation was the erection of dwelling-houses on the lots in said tract and the selling or the leasing thereof.

On the twenty-sixth day of January, 1905, the plaintiff and the defendant, Joseph A. Leonard, entered into a written agreement, by the terms of which said Leonard became, for the term of four years from the first day of January, 1906, the manager of plaintiff's business, for the performance of the duties of which he was to receive certain stipulated compensation.

Among other covenants, said contract contained the following: "In the event that the land owned or hereafter acquired

by the Society in the 'Jordan Tract' is finally built up by the erection of houses as now contemplated, or building operations thereon are suspended for ninety (90) days on account of inability to sell houses and lots at a profitable price, or if, for any reason, the net profits for any period of ninety (90) days shall be less than the expenses properly charged against that period of time, then this agreement may be terminated by either party upon giving sixty (60) days notice, and thereupon accounts between the parties thereto shall be closed, and as soon as ascertainable, profits adjusted in accordance therewith.''

It was further provided by said contract that, ''at the time of the settlement between the parties hereto, if any question arises as to the value of any of the securities, mortgages or any property,'' etc., '' . . . such question shall in the event the parties hereto cannot agree as to the value, be appraised by two appraisers, one to be selected by the first party and one to be selected by the second party.''

On the ninth day of January, 1908, the board of directors of the corporation, then composed of James C. Jordan (president), E. K. Taylor, William B. Pringle, H. G. Pendleton and Joseph A. Leonard (defendant), who also held the office of vice-president, held a meeting at which a resolution was adopted by which, after setting forth that the net profits of plaintiff ''for a period of thirty days have been less than the expenses properly charged against that period of time,'' the contract made with Leonard was, in accordance with the terms of paragraph 5 thereof, above quoted, terminated, it being therein further provided that sixty days' notice be given Leonard of the election of the corporation to terminate said contract.

Leonard was present at said meeting and voted against the adoption of said resolution.

On the same occasion, the president of the corporation wrote and delivered to Leonard a letter, formally notifying him of the foregoing action of the board of directors.

On March 4, 1908, a committee selected from the board of directors, having previously been appointed for that purpose, reported to the board at a regular session thereof that ''the value of the goods, securities, mortgages and properties, and

the amount to be written off for depreciation, are materially different from those given in the statement referred to the committee and reports of Mr. Leonard now on file.''

Said report was received and filed and thereupon the board of directors adopted a resolution declaring that a dispute had arisen between plaintiff and Leonard ''as to the value of the securities, mortgages and property of this company, and as to the amount to be taken off for depreciation,'' and appointing, under the authority so to do provided for by the contract between plaintiff and Leonard, one Stanley Pedder to be its arbitrator and appraiser, ''to join with an arbitrator and appraiser to be appointed by J. A. Leonard under said contract, and to act under said contract in said matters, and that Mr. J. A. Leonard be and is now requested to appoint an arbitrator and appraiser in accordance with said contract.''

On the same day—March 4th—a resolution was adopted instructing Leonard to deliver up, on March 9th, possession of the keys to the offices and buildings and of ''everything pertaining to the company to Mr. Pendleton, the secretary of the corporation,'' etc.

The offices of the manager and the board of directors were located in a building situated within the exterior boundaries of ''Jordan Tract.'' On March 11, 1908—a trifle over sixty days after notice had been served upon Leonard of the action of the directors terminating the contract by which he was employed as manager of the corporation—directors Pringle, Pendleton and Taylor, accompanied by several other parties, including Pedder, who, as seen, was appointed by the board as arbitrator and appraiser to examine into the affairs of the company, called at the office of the manager and demanded a surrender of the possession of his office and the properties of the corporation. Pringle read to Leonard, in the presence of some other men, some of whom were special policemen, who were there to aid Leonard in keeping possession, the several resolutions theretofore adopted by the board of directors—the one terminating Leonard's employment and the others appointing Pedder as an appraiser, etc., and authorizing Pendleton, as secretary of the corporation, to take charge of the keys and the properties, etc. But Leonard,

assisted by the special policemen, refused to permit the directors to take charge of the affairs of the corporation. Pedder, having entered the office, was ejected by force. While Pendleton was permitted to go into the office and the other buildings, he was not allowed to handle any of the properties of the corporation.

On several occasions thereafter, the directors, either through agents specially commissioned for that purpose or by their own personal efforts, attempted to secure possession of the manager's office and the properties of the company, but were each time repelled by Leonard, the latter at different times forcibly ejecting Pedder, a Mr. Derby, appointed by the board to take charge of the affairs of the company, and the Kinney Brothers, who were, on the twentieth day of March, 1908, appointed and authorized by the directors to take and maintain possession, on behalf of the corporation, "of all the real property of this corporation in Jordan Park, including the mill thereon and its contents." One Sullivan, a carpenter, had been sent by the board to the premises to take charge of the mill and proceed with the completion of certain dwelling-houses then in process of construction, and upon which no work was then being done on account of the differences between the company and Leonard. The latter refused to permit Sullivan to take charge of the mill and execute the duties thus committed to him. In addition to the commission of the foregoing acts of resistance to the efforts of the corporation to secure. possession and control of its properties and affairs, Leonard changed the locks on the doors to his office and other buildings on the premises, and also changed the combination to the safe. He, however, turned the keys to the new locks and the combination over to the secretary, Pendleton, on March 12th. Leonard, with his family, resided in the upper story of the building in which his office was located.

From the statement of the facts as thus given, it will be observed that the conduct of Leonard, throughout the whole controversy, consisted entirely in a persistent refusal on his part to allow any person authorized so to do by the directors to have any voice in the management of the company's business, and to that end ejected by force, where necessary, any person commissioned and sent by the corporation to supplant

him as manager. And thus the situation remained until the ninth day of April, 1908, when he surrendered his position as manager and the possession of the properties of the company to the board of directors.

The action here is for forcible entry and forcible and unlawful detainer of the premises referred to, for restitution of said premises, and for damages for the entry and detention thereof so alleged. The complaint was filed March 28, 1908.

The action was tried by jury and a verdict was returned in favor of plaintiff for forcible detainer, and, therefore, for the restitution of the premises but awarding no damages.

The court thereupon caused judgment to be entered that defendants "have been and are guilty of a forcible detainer of the said lands and premises and improvements, but have not been and are not guilty of any forcible entry, . . . and it is further decreed that the plaintiffs do not recover or have judgment for any damage or damages herein," etc.

This appeal is prosecuted by the plaintiff from that part of the judgment decreeing that defendants were not guilty of a forcible entry and that "plaintiff do not recover or have judgment for any damage or damages herein," etc., and from the order denying plaintiff a new trial.

It may be well here to explain that the defendant, Holzhausen, was an employee of the corporation under Leonard, and that at the times the directors attempted to obtain possession of the properties of the corporation from Leonard he (Holzhausen) assisted Leonard in resisting the directors and, in fact, had been commissioned a special policeman, no doubt for that specific purpose.

In its charge the court instructed the jury that there was no evidence of a forcible entry by the defendants, and thus eliminated that issue from the case, and, therefore, excluded it from consideration by the jury.

The main contention of the appellant is that the court erred to its prejudice in thus taking the question of forcible entry from the jury and, further, that the court abused its discretion by disallowing a proffered amendment to the complaint under the averments of which certain special damages might be shown, evidence offered in proof of such damages having been rejected on the ground that they were not pleaded.

It is further claimed that the court erred by refusing to read to the jury an instruction, submitted by the plaintiff, covering the question of exemplary damages.

We think the case must be sent back for retrial for the ruling disallowing the proposed amendment to the complaint. But we have conceived it to be proper to decide the first point above stated and thus dispose of it as an issue on the retrial, if the evidence adduced therein be no different from that presented in this record. We shall also pass upon the third point above stated.

In the outset it is just as well to say that we are unable to perceive any element of forcible entry of the premises described in the complaint or of any part thereof on the part of either of the defendants or both.

Section 1159 of the Code of Civil Procedure thus defines forcible entry: ''Every person is guilty of forcible entry who either: 1. By breaking open doors, windows, or other parts of a house, or by any kind of violence or circumstance of terror enters upon or into any real property; or 2. Who, after entering peaceably upon real property, turns out by force, threats, or menacing conduct, the party in possession.''

Of course, it is not claimed, nor could it be under the evidence, that the conduct of the defendants comes within the purview of the first subdivision of the foregoing section. But the contention is that the acts of the defendants as disclosed by the evidence may be so construed as to bring them within the terms of the second subdivision of said section. In support of this view, counsel for appellant cite section 1172 of the Code of Civil Procedure and a number of California cases which, it is claimed, sustain appellant's construction of the meaning and scope of that section.

Said section provides, *inter alia,* that on the trial of any proceeding for any forcible entry, the plaintiff shall only be required to show, in addition to the forcible entry complained of, that he was peaceably in the *actual* possession at the time of the forcible entry.

To sustain the contention of appellant, it would be necessary to hold that with the expiration of the sixty days' notice which the contract between the parties stipulated should terminate Leonard's employment as manager, the plaintiff would, *ipso facto,* or by operation alone of the terms

themselves of the contract, and without any further act or
steps on its part or that of Leonard, be placed in *actual* pos-
session of the premises. This could, of course, no more be
true than that the violation by a lessee of a vital covenant
of a lease would itself have the effect of immediately putting
the lessor into the *actual* possession of the demised premises.
It is very manifest that a lease or a contract by which the
possession of land is held cannot work automatically in that
respect.

Leonard's possession arose by virtue of his appointment
or employment as manager of plaintiff's business, and if he
never himself abandoned or surrendered the possession of
the premises so acquired, then, it seems obvious to us, he could
not be guilty of forcible entry merely for the reason that
the plaintiff had declared his contract at an end and there-
fore his right to the actual possession of the property for-
feited. Indeed, to the contrary, if, under such circumstances,
the plaintiff had forcibly driven Leonard from the premises
and thus taken possession thereof, it would itself have been
guilty of forcible entry, although it might transpire, as it
has transpired, that, as a matter of legal right, it was enti-
tled to the possession. This proposition necessarily follows
from the very theory upon which or the purpose for which
the forcible entry and forcible and unlawful detainer statute
is enacted, viz., to secure a *judicial* adjustment of differences
of that character and thus prevent the parties themselves
from redressing or attempting to redress their own wrongs
which is likely to lead to serious wrongs against the public
or society.

While the question of the right of possession must neces-
sarily arise in such cases, since the power to award restitu-
tion of the premises involved rests with the jury or the court,
and since, moreover, it may enter into the determination of
the question whether punitive damages should be allowed,
still it is only an incidental issue, the gist of such actions
being in the wrong which inheres in the very act itself of
forcibly entering upon and invading the possession of another
or forcibly or unlawfully detaining a possession to which the
detainer is not lawfully or rightfully entitled.

The undisputed evidence, as seen, shows that Leonard had
been put in possession of the premises as manager of the

corporation's business by plaintiff itself, and it further shows
that he had never abandoned or surrendered such possession
and still maintained the possession thus obtained until the
surrender of the same by him on the ninth day of April,
1908.    It is true that the meetings of the board of directors
were regularly held in one of the rooms of the building on
said premises in which Leonard's office was located; but
Leonard never had nor claimed to have ever been given pos-
session of that room.   The possession of said room by the
directors or the corporation was not inconsistent with, nor
did it in any measure whatsoever impair, Leonard's right
to the possession of his office and of the balance of the prem-
ises and property, into the possession of which he entered
under his contract with plaintiff.   There is no evidence show-
ing that the directors or the corporation were ever at any
time prevented by Leonard or any other person employed
by him from occupying for any purpose the room in which
they had customarily held their meetings and transacted their
official business.

It is no doubt true, as the jury found, that it was the duty
of Leonard to have surrendered possession of the premises
upon the expiration of the sixty days' notice to him that
his contract with the company had been terminated and a
demand by the officers of the corporation for the return of
the possession, but this omission or refusal does not consti-
tute proof that he was not in actual possession, peaceably
obtained, or that his conduct in forcibly ejecting the agents
and representatives of plaintiff from his office or those parts
of the premises of which he had possession, however inde-
fensible in law his conduct might be, constituted anything
more than a wrongful and forcible detention of a possession
which he had lawfully and peaceably acquired.

These views are not at all out of harmony with the rule
as it is enunciated and applied in the cases cited by appel-
lant.   Indeed, the most recent of these (*Kerr* v. *O'Keefe
et al.,* 138 Cal. 415, [71 Pac. 447]), if anything at all, is an
authority against the contention of appellant.   In that case,
the plaintiff (lessee) was in default in the payment of rent.
The lease provided that on such default by the lessee the
lessor might re-enter the premises, take possession thereof

and remove all persons therefrom. The defendant (lessor), upon the lessee being so in default, made a peaceable entry upon the premises, in the absence of plaintiff, and took possession. Thereafter, the plaintiff returned to the premises, ordered the defendant to leave the same, and thereupon, the latter, reinforced by his brother and a loaded shotgun, proceeded to "remove," and in fact ejected, the plaintiff from the premises and took possession thereof himself. Action for forcible entry was instituted by plaintiff and sustained by the courts. The defendant (the lessor) set up the plea that, the lease having provided that he might re-enter and retake possession of the premises upon default in the payment of the stipulated rent, he, therefore, entered upon the possession under color of right and in good faith. All that was decided in that case of importance was that the plea so made was without merit, the supreme court saying: "We cannot see that *good faith* constitutes an element in a defense to a forcible entry or forcible detainer, . . . nor that an entry peaceably made and in good faith cuts any figure in a defense to a forcible detainer." But, while the defendants in the present case could not, in an action for forcible detainer, defend their unlawful and forcible detention of the property on the ground that they believed in good faith that they were entitled to its possession, yet, having been given and taken peaceable possession thereof, and being so in possession, their resistance to dispossession by the plaintiff, who was entitled to actual possession, cannot, as we have before declared, be construed into a forcible entry thereof merely because the defendants had no right to the possession or no defense which they could successfully interpose to such unlawful and forcible detainer.

Our conclusion upon this point is that the court was right in taking from the jury the question whether there was a forcible entry by the defendants—an issue tendered by the complaint which, as we have seen, derives absolutely no support from the evidence.

But, as announced in the outset of the discussion, we think there was a clear and palpable abuse of discretion in the denial to plaintiff of its application to amend its complaint.

The complaint as filed alleged generally that the plaintiff had, by the acts of the defendants in detaining from it the

possession of the premises for a period of nearly one month, suffered damage in the sum of $15,000.

The action was commenced on the twenty-eighth day of March, 1908. The trial was begun on the sixteenth day of April, 1908. On the fourteenth day of April, 1908—two days prior to the commencement of the trial—the plaintiff served on the attorney for the defendants a copy of a proposed amendment to the complaint. Said proposed amendment contained averments of special damages, as follows: 1. Rental value, one month, of the real estate, $625; 2. Delay in receiving purchasing price, four houses, $65.45; 3. Cost, maintaining plant during forcible holding, $5,000; 4. Cost of watchmen to guard during suspension of work by the unlawful and forcible detainer, including wages of Sullivan and his crew, who were forced to cease work, $1,069.50; 5. Punitive damages for vindictiveness. On the first day of the trial, counsel for the plaintiff made an application to the court for leave to amend its complaint in the particulars mentioned. Objection to the allowance of the amendment was made by counsel for defendants and sustained by the court. What the specific ground of the objection was does not appear in the record, but it is stated by counsel for appellant, and not denied, that no objection was taken to the proposed amendment on the ground of surprise or on the ground that the granting of the motion would necessitate a postponement of the trial.

Thereafter, counsel for appellant undertook and offered to prove the special damages as specially pleaded in the proposed amendment, promising that, if the court would permit such proof, they would amend the complaint so that its allegations would conform thereto. The court allowed proof of rental value under the general allegation of damages (*Tewksbury* v. *O'Connell*, 25 Cal. 263), but as to all other damages the offer was rejected on objections interposed thereto by counsel for defendants on the ground that the same were not pleaded.

We do not think, as counsel for appellant contend, that the amendment proposed comes within the provisions of section 1173 of the Code of Civil Procedure. That section does not vest in the court the power of allowing all sorts of amendments in cases of this class, as will readily be observed

upon reading it.  It provides that where "it appears from the evidence that the defendant has been guilty of either a forcible entry or a forcible or unlawful detainer, and other than the offense charged in the complaint, the judge must order that such complaint be forthwith amended to conform to such proofs," etc.  We apprehend that nothing further by way of amendment can be authorized by the court under that section than what is therein expressly prescribed.  In other words, there is no authority given the court by said section to allow amendments for any other purpose than that expressly stated.

But trial courts are, by virtue of section 473 of the Code of Civil Procedure, possessed of general and ample power to allow amendments at any time before, during and even after trial and before judgment to any pleading, and where it clearly appears, as we think it does here, that it would be in furtherance of justice to allow an amendment proposed at an opportune time within the meaning of that section, a refusal to do so constitutes an abuse of the discretion which said section has committed to trial courts.

The undisputed evidence shows, as we have seen, that the plaintiff served its proposed amendment on the attorneys for the defendants two days before the commencement of the trial and that application for leave to amend was urged on the day on which the trial began and before evidence was taken.  There was no claim, as there could scarcely be consistently with reason, that counsel for appellant were taken by surprise, nor was there any showing made that a continuance would have been necessary by reason of the amendment, if allowed, and if there had been the court could have granted the motion upon any reasonable terms to which it might, in its discretion, have felt constrained to subject the moving party.

It will not, of course, be denied that the plaintiff was entitled to show, if it could, under a complaint sufficient for that purpose, any damages occasioned to it by the forcible or unlawful detainer complained of (Code Civ. Proc., sec. 1174)—that is to say, it was entitled to recover, if it could prove it under appropriate averments of its complaint, any damage that was the *natural* and *proximate consequence* of the alleged forcible or unlawful detainer.  (2 Greenleaf on

Evidence, sec. 256; *Anderson* v. *Taylor,* 56 Cal. 131, [38 Am. Rep. 52].) If, therefore, plaintiff could show that it had suffered the loss of rents through the acts complained of against defendants or had necessarily been put to expense in protecting its property while the defendants wrongfully and forcibly detained the same and by reason thereof, or that it had sustained loss by the cessation of the prosecution of its business during the period of the wrongful detention and by reason thereof, then all such facts would disclose proper items of damages, and, if pleaded, the rejection of proof thereof would manifestly be erroneous and prejudicial. And, as seen (with the exception of the items for rent and punitive damages), such were the special damages to which the proposed amendment, if allowed, would have given plaintiff an opportunity to address whatever proof that was available to it in those respects.

The supreme court of this state has repeatedly declared that great liberality should be shown by a trial court in permitting, where it can be done without working great delay, such amendments to pleadings as will facilitate the production of all the facts bearing upon the questions involved in the action. (Spelling on New Trial and Appellate Practice, sec. 107, and cases therein cited.)

"The object of judicial proceedings is to discover all the facts of a case and apply the law; and the theory of the code is that the parties should each have reasonable opportunity to present his side of the case." (*Lower Kings River etc. Co.* v. *Kings River etc. Canal Co.,* 67 Cal. 577, [8 Pac. 91].)

We have been unable to discover, from the circumstances under which the application was urged for permission to amend the complaint in this case, any reason why the amendment should not have been allowed. The action here is a summary proceeding and was designed to afford the speediest legal remedy by which one may secure redress for the wrongful or forcible invasion of his possession of real property, or, where the possession of the same, though rightfully obtained, is forcibly or unlawfully detained, for the restitution of the premises and damages, if any are sustained, for the wrongful act. In such cases it is likely to often happen, as it no doubt

has frequently occurred, that complaints are hastily and, as a consequence, carelessly drawn, with the result that many facts which might properly be proved are either not properly pleaded or not pleaded at all. In such cases, therefore, trial courts should be particularly liberal in allowing amendments, especially so where, as here, it appears reasonably clear that full justice may not be done without such amendments.

In the present case, it does not appear, as before stated, that either the court or the defendants would have been subjected to great, if any, inconvenience or the defendants placed at any undue disadvantage by the granting of plaintiff's application to amend, and, while it may be true, as counsel for the defendants suggest, that the possession of the premises having been turned over to plaintiff before the commencement of the trial, the present action could have been dismissed and the plaintiff have instituted another action to recover *all* the damages it claims to have sustained, yet the law requires no such course to be followed, and the suggestion is no argument in support of the court's action in denying plaintiff's application.

It is, however, intimated by counsel for the respondents that the amendment could have served no useful purpose, since the evidence discloses ''that the respondents never interfered with appellant's possession of any part of the tract mentioned in the complaint, except a portion of one block and four lots upon which houses were being built''; that ''there was no evidence that the plaintiff or any of its officers or employees ever sought admission to the paint-shop or the plumbing-shop or the warehouse or the drafting-room, which was a part of the office, or to the lumber-yard, except that a demand made for keys to those shops and rooms was not complied with until five or six days afterward.''

But the gist of Leonard's sinning did not consist so much in refusing to allow the officers of the company to enter the premises or the buildings thereon as it did in refusing to allow them to take possession of the premises and so proceed with the business of the corporation. The evidence, it is very true, shows that he permitted the physical entrance of some of the directors into the building and into his office, but he

positively refused to allow them to take charge of the affairs
of the corporation or to do any act in furtherance of the
business of the concern.  He would not permit the men em-
ployed by the corporation to proceed with the completion of
the houses then in course of construction.  He would not
allow it or its employees to take lumber and other material
essential to the completion of the unfinished buildings.   These
constituted hindrances or delays which might result in great
damage to the corporation.

A might employ B as his manager to take sole possession
of and conduct his mercantile business.  If A should finally
demand from B the return of the possession of the building
and the business, and the latter should refuse the demand
and not allow A to do any act in connection with the busi-
ness, or should close down the business and refuse to allow
A to reopen it or to take any other steps looking to a resump-
tion of the business, the mere fact that B might have allowed
A physical entrance into the building in which the business
was carried on would most certainly not absolve B from the
charge of unlawful or perhaps forcible detainer, nor from
liability for any damages A might suffer by reason of B's
conduct.

The business of the plaintiff here is, as stated, the building,
selling and renting of houses upon a large tract of land, and
the acts of Leonard necessarily had the effect of stopping
the business, practically closing it down for a period, and
certainly it cannot be maintained that, because Leonard gen-
erously permitted its officers to go upon the premises, with
permission, however, to exercise no more authority over the
affairs of the corporation than if they were perfect strangers,
the defendants may escape the responsibility of responding in
whatever damages plaintiff may be able to show were proxi-
mately occasioned to it by their unauthorized acts.

It was not necessary, in our opinion, for the plaintiff to
plead more than the alleged forcible detainer to entitle it to
prove facts which would have justified the court in awarding
exemplary or punitive damages.   The charge of *forcible* de-
tainer of real property necessarily carries with it the impli-
cation that such detainer is from a bad motive, and what the
precise nature of that motive is—whether it be founded in
malice or fraud or oppression of any sort—may properly be

shown under the general averment that the detainer is *forcible*. It may be that the defendant in such a case can show that the force used was only in furtherance of the maintenance of his rights; yet, the statute having said that such detainer is in violation of law, the mere charging of the act presupposes the existence therein of all the elements essential to the consummation of the charge as it is defined by the statute, and whether, as a matter of fact, elements justifying the imposition of punitive damages are present in the act must, of course, depend upon what the proof discloses.

But the court did not, in our judgment, err by its refusal to allow the instruction, proposed by the plaintiff, which would have authorized the jury to allow exemplary damages or damages which may be allowed under the provisions of section 3294 of the Civil Code. Indeed, we think that an examination of our statute relative to actions for forcible entry and forcible or unlawful detainer will show very clearly that the legislature intended to commit to the court, rather than to the jury, the determination of the question whether in such cases damages by way of punishment shall be allowed, and, manifestly, under this view of the proposition, an instruction to the jury upon the question of exemplary damages would be entirely out of place.

Section 1174 of the Code of Civil Procedure, among other things, provides that "the jury or the court, if the proceedings be tried without a jury, shall also assess the damages occasioned to the plaintiff by any forcible entry, or by any forcible or unlawful detainer, alleged in the complaint and proved on the trial, and find the amount of any rent due, if the alleged unlawful detainer be after default in the payment of rent. Judgment against the defendant guilty of the forcible entry, or forcible or unlawful detainer may be entered *in the discretion of the court either for the amount of the damages and rent found due, or for three times the amount so found.*"

Section 735 of the same code provides: "If a person recover damages for a forcible or unlawful entry in or upon, or detention of any building or any cultivated real property, judgment may be entered for three times the amount at which the *actual damages* are assessed."

Thus, it will be perceived, the legislature has clearly limited the power of the jury in such cases, so far as damages are concerned, to the assessment of such damages only as have actually been suffered by the complaining party, and has conferred upon the court the sole power of determining, in the exercise of its discretion, whether, in a given case, the circumstances are such as to justify the entry of judgment in favor of plaintiff, as a penalty for the acts of the defendant, for three times the amount found by the jury either as damages or for rent.   That the power thus specially given the court was intended to be exercised in those cases only where the evidence discloses that the defendant has committed the tortious act charged against him wantonly or by oppression or with malice, express or implied (Civ. Code, sec. 3294, *supra*), is a proposition which, in our opinion, is rendered free from any kind of doubt, if not alone by the language of section 1174 of the Code of Civil Procedure, then most surely by that of section 735 of the same code.   In other words, the power to treble the damages or rent is a power to be exercised by way of punishment only, and the legislature has (wisely, we think, as the writer further thinks would be true if it were so in all cases as to the awarding of punitive damages) committed the exercise of that power to the courts in preference to the jury, the theory of the lawmakers no doubt being that the court, having equal opportunity with the jury of hearing and passing upon the testimony, is better able to decide whether the evidence warrants the imposition of any penalty at all or an allowance in excess of the amount found by the jury to be the damages actually sustained.

But if any doubt could arise, from the mere reading of sections 1174 and 735 of the code, as to the construction thus given those sections—that is, that the legislature thereby intended to restrict the power of the jury, in cases of forcible entry and of forcible or unlawful detainer, to the passing upon and deciding of the question of the *actual* damages, if any, sustained by the plaintiff, and to vest in the court the exclusive power and discretion of annexing a punishment by trebling the amount of the damages or rent—then such doubt will readily disappear upon reference being made to some very early California cases which have never been reversed

and which, we think, can never be reversed by any logical process so long as the statutes concerning forcible entry and forcible or unlawful detainer remain as they now exist and read.

In the case of *Hicks* v. *Herring,* 17 Cal. 568, Chief Justice Field, speaking of a provision of the law precisely similar to the one we are considering, said: ''This section is added, not merely to indemnify the complainant for the injuries suffered from loss of rents and profits, and for waste committed, but to punish the offending party.'' ''In other words,'' said Judge Currey, referring to the same section, in *Tewksbury* v. *O'Connell,* 25 Cal. 264, ''by the amendment the landlord was held only to claim and prove damages; and then when assessed, it became the magistrate's [the court's] duty, not by reason of the claim therefor, but in the enjoined exercise of *penal* authority, to treble them.''

Certainly it will not be contended that, the statute having said that the court may, in the exercise of its discretion, add, by way of example or punishment, the amount specified therein to that found by the jury as representing the amount of the rent or the damage actually suffered by the plaintiff, the jury may, nevertheless, also add exemplary damages. The manifest result of such a construction would be that the defendant could not only be required to pay three times the actual damages found, but could also be compelled to pay three times the amount of the exemplary damages awarded. And if the jury may, in addition to actual damages, allow damages by way of a penalty, the court may, obviously, likewise do so, where the cause is tried by the court without a jury. Surely it cannot be said that the court could find actual damages, to which, as a finding from the evidence, it could add punitive damages, then, additionally, in the exercise of the discretion with which it is invested by section 1174 of the Code of Civil Procedure, treble the total amount so found.

Nor is it a reply to the construction to which we here subject the sections in question to say that, in case the jury, in addition to finding actual damages, awards exemplary damages, the court will not enter judgment for treble the damages so found, and that if it did do so, under such cir-

cumstances it would be an abuse of the discretion committed to it by the statute; for in no case could the court know or segregate the actual from the exemplary damages, and we know of no case where the jury have done so in their verdict.

It follows, of course, from the foregoing views that evidence bearing upon the question of punitive or exemplary damages is, in cases of forcible entry or forcible or unlawful detainer, always to be addressed to the court and not to the jury, and that, as before announced, instructions to the jury upon that question could, obviously, subserve no useful purpose.

There are no other questions presented which, in our judgment, require special notice.

For the reasons herein stated, the judgment and order are reversed and the cause remanded for retrial.

Chipman, P. J., and Burnett, J., concurred.