[Civ. No. 1376. Third Appellate District.—February 5, 1916.]

## WILLIAM SNYDER, Respondent, v. BEN MILLER et al., Appellants.

ACTION ON PROMISSORY NOTE—PLEADING—AMENDMENT OF COMPLAINT—DATE OF ASSIGNMENT OF NOTE—DISCRETION NOT ABUSED.—In an action to recover on an assigned promissory note there was no abuse of discretion in allowing the plaintiff to amend his complaint when the case was called for trial, so that the date of the assignment would appear as of the date of the execution of the note, instead of the date mistakenly alleged in the original complaint, where the defendant was not placed at any disadvantage by the amendment, and his principal defense rested upon a release of the defendant from the note.

ID.—ALLOWANCE OF AMENDMENTS TO PLEADINGS.—The allowance of amendments to pleadings is a matter resting in the sound legal discretion of the trial court, and great liberality should be shown by it in permitting, where it can be done without working great delay, such amendments to pleadings as will facilitate the production of all the facts bearing upon the questions involved in the action.

ID.—CONSTITUTIONAL LAW—REVIEW OF EVIDENCE IN CIVIL CASES.—The recent amendment to section 4½ of article VI of the constitution, whereby appellate courts, in civil cases, are authorized, for certain indicated purposes, to examine "the entire cause, including the evi-

dence," etc., does not contemplate the review of the evidence with a view of determining where the preponderance lies, but that the evidence may be reviewed only for the purpose of determining whether the court may be required to hold that from any error in the misdirection of the jury, or in the admission or rejection of evidence, or as to any matter of pleading or procedure, a miscarriage of justice has resulted.

APPEAL from a judgment of the Superior Court of San Joaquin County.  C. W. Norton, Judge.

The facts are stated in the opinion of the court.

Light & Crane, and A. V. Scanlan, for Appellants.

A. H. Carpenter, for Respondent.

HART, J.—This is an action on a promissory note.  Judgment passed for the plaintiff, and from said judgment the defendants take this appeal.

The record shows and, indeed, counsel for the appellants concede, that the judgment against the defendants, Rottenberg and Case, was entered upon their default, duly entered, on failure to answer the complaint, on the eleventh day of May, 1914, which was six months prior to the date of the taking this appeal.  The appeal as to those defendants is, therefore, abortive, as counsel concede, and they have expressly abandoned the same.

The complaint sets out the note declared upon *in haec verba.*  It was executed in favor of Roy Snyder, son of the plaintiff, for the sum of $2,472.45, with interest at the rate of 7 per cent per annum, payable monthly, and provided for the payment of the principal sum in monthly installments of five hundred dollars, to be paid, beginning with the fifteenth day of July, 1913, on the fifteenth day of each succeeding month, until the total amount was paid in full, the last installment, however, which was payable on the fifteenth day of October, 1915, involving the sum only of $472.45.

The complaint, as originally filed, alleged that, after the execution and delivery of said note, "and on or about the —— day of June, 1913, and before said note became due or payable, the said Roy Snyder duly indorsed, assigned, and delivered said promissory note, for a valuable consideration,

to the plaintiff herein, who ever since has been, and now is the lawful owner and holder of said promissory note.''

The answer of the defendant, Miller, admits the execution and delivery of said note as alleged in the complaint, but denies that the same was assigned by the payee named therein, Roy Snyder, at any time or at all, to the plaintiff for a valuable or any consideration. By way of avoidance, the defendant alleges. that, on the twenty-second day of May, 1913, Roy Snyder, in consideration of the execution of a promissory note in his favor by the defendants, Rottenberg and Case, and which note was delivered to him, the said Roy Snyder executed and delivered to the defendant, Miller, a covenant of release and satisfaction and acknowledgment of full payment, so far as Miller was concerned, of the note in suit; ''that at the time of the execution and delivery of said release and said last mentioned note herein, the plaintiff was present with plaintiff's assignor and had full knowledge of said release and satisfaction of said promissory note in plaintiff's complaint set forth.''

When the trial of the cause was called, the counsel for the plaintiff asked, and the court granted, leave to amend the complaint so that the date of the assignment of the note by Roy to the plaintiff would appear as the ''15th day of February, 1913,'' the date of the execution of the obligation, instead of the ''—— day of June, 1913,'' as originally alleged in the complaint.

The court found that the note had been executed and delivered and assigned, as alleged in the amended complaint; that the sum of one thousand five hundred dollars, and no more, had been paid thereon, and that the sum of $1,159.61, and accrued interest, was still due thereon.

As to the special defense, the court found: ''That the release set forth in the defendant Ben Miller's answer was made and executed on the twenty-second day of May, 1913, by the original payee, Roy Snyder, and that at that time the said Roy Snyder was a minor, under the age of twenty-one years, and had no right, power, or authority to make or execute such release, as he had theretofore, on the fifteenth day of February, 1913, sold, assigned, and transferred unto the plaintiff all his right, title, and interest therein; and that plaintiff was not bound by such release and had no knowledge that such release had been executed.''

The general contention of the appellant, Miller, is that certain vital findings are not sustained by the evidence. There is a further objection that the court failed to find upon the special defense set up by the defendant, Miller, involving, as we have seen, the statement of new matter. Complaint is also made that, in allowing the plaintiff to amend his complaint in the particular above explained, the court abused its discretion.

Taking up, first, the last stated contention, we are, upon a consideration thereof, required to say that we are not justified in holding that the court abused its discretion in allowing the amendment. The object of the amendment was obvious from the face thereof. Precisely why the date of the assignment was not in the first instance alleged as of the fifteenth day of February, 1913, we are, of course, unable to say, but we may and must assume, from the amendment, that, from the plaintiff's understanding of the fact, a mistake in that respect was made in the complaint as it was originally drafted and filed. Of course, a party is entitled to state his case in his pleading as he understands the facts thereof and as he believes he can prove them. The defendant and his counsel were present when the amendment was prepared and made, and had no trouble in amending their answer so as to meet by denial the complaint as so altered. They asked for no continuance of the trial on account of the allowance of the amendment, and from this we may assume that they were as well prepared then to go on with a trial of the issues as at some future time. The only objection which appears to have been made by the attorney for the defendant to the proposed amendment was that, if allowed, it would necessitate an amendment of the answer. This was, of course, no valid objection to the allowance of the amendment. Very naturally, an amendment of a complaint in a material respect would call for an amendment of the answer.

The allowance of amendments to pleadings is a matter resting in the sound legal discretion of the trial court, and the appellate courts of this state have repeatedly declared that "great liberality should be shown by a trial court in permitting, where it can be done without working great delay, such amendments to pleadings as will facilitate the production of all the facts bearing upon the questions involved in the action." (Spelling on New Trial and Appellate Prac-

tice, sec. 107, and cases therein cited; *San Francisco etc. Soc.* v. *Leonard,* 17 Cal. App. 254, 267, [119 Pac. 405].) Of course, as was said in *Baxter* v. *Riverside Portland C. Co.,* 22 Cal. App. 199, [133 Pac. 1150], and in *Hayden* v. *Hayden,* 46 Cal. 333, some good reason should ordinarily be affirmatively disclosed justifying the amendment before the court acts favorably upon the proposition.

In this case, while the reason for the mistake was not shown, we think that where, as here, the defendant is put to no trouble or inconvenience or placed at no disadvantage by the amendment, and where his principal defense did not rest upon the question whether the note was duly executed or wholly upon the proposition whether it was assigned by the payee at a particular time or assigned at all, but upon a release of the defendant from the obligations thereof, it cannot well be said that the trial court abused its discretion by allowing the amendment. The object of judicial proceedings is to discover all the facts of the case as they actually occur and exist and apply the law thereto; and the theory of the code is that the parties should each have reasonable opportunity to present his side of the case upon the facts as he understands they actually transpired. (*Lower Kings River etc. Canal Co.* v. *Kings River etc. Canal Co.,* 67 Cal. 577, [8 Pac. 91].)

The facts as to which there is no controversy are as follows: That, at some time prior to the year 1913, the plaintiff bought and paid for a clothing store in the city of Stockton for his son, Roy Snyder, who was at that time, as well as at the time of the particular transactions involved herein, a minor, being somewhat near but less than twenty-one years of age. Prior to the seventh day of February, 1913, the defendants, Rottenberg and Miller, began negotiations looking to the purchase of said clothing store from young Snyder, and on the said seventh day of February, 1913, an agreement of purchase and sale, including the total price and terms, was finally reached by the parties and the same reduced to writing. Among the terms so agreed upon were that Rottenberg and Miller should pay to Snyder, Jr., one thousand dollars cash on the completion of an inventory of the stock and fixtures on hand, and the balance to be evidenced by several promissory notes, to be secured by a chattel mortgage on the stock of goods and the fixtures. The

agreement, according to its terms, was fully carried out and consummated on the fifteenth day of February, 1913, Among the notes given by Rottenberg and Miller to Snyder, Jr., is the one in question here.

The plaintiff and his assignor testified that the latter was, at the time of the sale of the store to the defendants and the delivery to him of the promissory notes, indebted to the former in the full aggregate sum of said notes, and that the notes were, on the fifteenth day of February, 1913, assigned to the plaintiff by his son, Roy Snyder, in payment of said indebtedness.

The chief ground of controversy here, however, proceeds from the instrument, executed by Snyder, Jr., on the twenty-second day of May, 1913, which, as seen, purported to release Miller from the obligations of the note in suit in consideration of the signing and indorsement of said note by the defendant, Case.

The defendant's claim is: 1. That the preponderance of the evidence is against the findings: That said note was assigned to the plaintiff by Roy Snyder on the fifteenth day of February, 1913, and that the plaintiff "is now and ever since has been" the owner and holder of said note; that "there is now due, unpaid, and owing to plaintiff from the said defendant, Ben Miller, on the said promissory note, the sum of $1159.61"; that, at the time of the date of the purported release (May 22, 1913), the said Roy Snyder was a minor, under the age of 21 years, and had no right, power, or authority to make or execute such release, as he had theretofore, on the fifteenth day of February, 1913, sold, assigned, and transferred unto the plaintiff all his right, title, and interest therein"; that the "plaintiff was not bound by such release and had no knowledge that such release had been executed." 2. That, conceding that the assignment of the note to the plaintiff was made on the fifteenth day of February, 1913, the evidence shows that he had knowledge of and acquiesced in the execution of the release by his son.

As we have shown, the plaintiff and his son testified positively that the note in suit was, with others given by the same parties, sold and assigned to the plaintiff by Roy Snyder on the fifteenth day of February, 1913, the date of its execution, the consideration being a then subsisting indebtedness,

previously contracted, of Roy to his father. While opposed to this testimony there was some adversary showing, it was, of course, with the trial court to determine the truth of the matter, and its finding that the note was so sold and assigned at the time mentioned is conclusive upon us. But counsel declare that the plaintiff, in his testimony, contradicted the allegation of his verified complaint as to the time at which the note was indorsed over to him by his son, and point to certain decisions in which causes have been reversed for a conflict so arising. (See *Branson* v. *Caruthers,* 49 Cal. 374; *Guerrero* v. *Ballerino,* 48 Cal. 118.) In this case, however, as has been shown, the plaintiff amended his complaint in the respect referred to, and between the allegation thereof as to the time of the assignment of the note and the testimony of the plaintiff upon that point there is no conflict. As before stated, from the fact that the amendment was made, we must assume that the original complaint contained an erroneous statement in the particular referred to. At any rate, the amended complaint superseded the original complaint for all purposes of the trial and by its allegations the testimony of the plaintiff must be viewed and considered. In the cases above cited, the allegations between which and the testimony of the plaintiff there existed a conflict were contained in the complaints upon which the actions were tried.

As to the question of the understanding of the parties with respect to the transaction eventuating in the execution of the release referred to and upon which the defendant, Miller, relied as the ground of his resistance to this action, the evidence is also conflicting.

It appears that Miller, within a few months after he and Rottenberg purchased the clothing store, withdrew from the firm, or, in other words, he and Rottenberg dissolved their copartnership. Both Miller and Rottenberg desired that the former should be released from the note in dispute. Miller testified that he had had a conversation with Roy Snyder and the plaintiff, explained to them that he wished to be released from liability upon the note, and stated that the defendant, Case, would indorse the note as security for the payment thereof by Rottenberg if he (Miller) was released. On the twenty-second day of May, 1913, when the release was executed in the office of an attorney in the city of Stockton, both the plaintiff and Roy Snyder were present, the

latter, as seen, affixing his signature to the release in the presence of all the parties. This testimony was corroborated by Case and the attorney in whose office the transaction was executed. On the other hand, the plaintiff testified that the sole purpose and effect of the instrument, as it was explained to him and as he understood it, was merely to release the chattel mortgage given on the goods in the store to secure the notes in consideration of the indorsement of the note in suit by Case. He said that Mr. Rottenberg had previously called upon him at his home and said that he (Rottenberg) was going to buy Miller's interest in the store, and "he wanted me to take Mr. Miller's name from the note. I went to Mr. McNoble's office and Mr. McNoble said that could not be done; they had a mortgage on the store—security for this second note. . . . Roy had a mortgage on the store. Mr. McNoble had advised him that a mortgage was not a very good thing to leave on the store. Finally they said if they would get Mr. Case to indorse this note—Mr. Case had not indorsed this note until that day—they asked me if they would get Mr. Case to indorse the note would Roy release the mortgage. I said yes, I thought that would be all right. Mr. Case signed that note in Mr. McNoble's office that day." The plaintiff further testified that the first time he ever saw the release which is pleaded in the answer was in the office of Mr. Freitas, one of the attorneys for the defendant, after this action was commenced. The attorney named, on that occasion, asked the plaintiff if he had ever seen the instrument before. "I told him you know I never had. I was surprised that such a thing existed. That was a new thing to me."

Roy Snyder testified that he clearly understood that the sole consideration for the indorsement of the note by Case was the release by him of the chattel mortgage on the store. He declared that he had no recollection of signing the release, although he admitted that it bore his signature. He said that, on the twenty-second day of May, he went to the county recorder's office and caused to be entered a release of the mortgage, and, he testified, "the only thing I remember signing was at the recorder's office, signing there the release of the mortgage."

Thus we have shown sufficient of the testimony on both sides to demonstrate that there is a clear conflict upon the

question of the purported release of the defendant Miller.
While, as is true in a majority of the cases, where a conflict
upon disputed points of fact exists, the evidence in this
case might uphold a finding the other way, still, in the very
nature of things, where, as here, there is a substantial con-
flict in the evidence, a court of review cannot substitute its
judgment for that of the trial court or jury upon the effect
of the evidence. Assuming that Roy Snyder did execute
the release with a clear understanding of its full import,
still, if he did so without the authority of his assignee of the
note and subsequent to the assignment, his act was, of course,
without force or effect. He had disposed of his interest in
the note and had no more authority to release an indorser
thereon or the payers thereof than if he were wholly a
stranger to it or to the transaction culminating in its exe-
cution and delivery to the payee. And the testimony of the
plaintiff is that he did not authorize his son to execute the
release nor did he after its execution acquiesce in or ratify
the act of his son in that particular. The finding based upon
this testimony is, under the well-known rule whereby review-
ing courts must be governed with respect to conflicting evi-
dence, binding upon this court.

Counsel for the appellant insist, however, that, under the
recent amendment to section 4½ of article VI of the constitu-
tion, whereby appellate courts, in civil cases, are authorized,
for certain indicated purposes, to examine "the entire cause,
including the evidence," etc., it is within the competence of
this court to review the evidence with a view of determining
where the preponderance or the weight of the evidence lies.
We do not think that the constitutional provision contem-
plates a task so impossible of accomplishment by courts of
appeal.

The language of that section of the constitution, fashioned
after that of a constitutional provision of similar import ap-
plicable to criminal cases, provides that "no judgment shall
be set aside, or new trial granted, in any case, on the ground
of the misdirection of the jury, or of the improper admission
or rejection of evidence, or for any error as to any matter
of pleading, or for any error as to any matter of procedure,
unless, after an examination of the entire cause, including
the evidence, the court shall be of the opinion that the error
complained of has resulted in a miscarriage of justice."

In *Vallejo etc. R. R. Co.* v. *Reed Orchard Co.,* 169 Cal.
545, 554, [147 Pac. 238, 243], Mr. Justice Shaw, speaking
of that amendment and applying it to that case, thus con-
strued the power of the appellate courts thereunder: "It has
always been the desire and policy of this court to disregard
unimportant and unsubstantial errors appearing in the rec-
ord, and to reverse causes only for reasons affecting the
merits of the case and the substantial rights of the parties.
Our power to do this has hitherto been somewhat limited by
the limitations upon our jurisdiction to consider the evi-
dence (*San Jose Ranch Co.* v. *San Jose etc. Co.,* 126 Cal.
324, [58 Pac. 824]). An important result of the aforesaid
amendment is that it enlarges our jurisdiction in that par-
ticular. Prior to its adoption, if the evidence was in sub-
stantial conflict as to a fact in issue, we were concluded by
the decision of the trial court thereon for all purposes of
the case, unless the error entered into and affected the con-
sideration of that evidence. Under the above section, we
have the power to review conflicting evidence for the pur-
pose of ascertaining whether or not an error 'has resulted
in a miscarriage of justice.' It is, indeed, made our duty
to do so, and the further duty is imposed to disregard mani-
fest error when, upon such examination, we shall not 'be of
the opinion that the error complained of has resulted in a
miscarriage of justice.' It is no longer the case that injury
is presumed from error; the injury must appear affirmatively
to the mind of the court after the examination required, or
from the nature of the error itself. (*People* v. *O'Bryan,*
165 Cal. 55, 56, [130 Pac. 1042].)"

As we understand the foregoing language, the true con-
struction of the constitutional provision referred to is, so
far as appellate courts are concerned, that the evidence may
be reviewed or examined, not for the purpose of determin-
ing the evidentiary value of the testimony or where the pre-
ponderance of the evidence lies, but only for the purpose
of determining whether the court may be required to hold
that from any error in the misdirection of the jury, or in
the admission or exclusion of evidence, or as to any matter
of pleading or of procedure, a miscarriage of justice has re-
sulted. The provision applies to trial courts in the matter
of passing on motions for a new trial, and, of course, such
courts, having heard the testimony, are in a position to pass

upon the probative value of the testimony, and, indeed, they are often called upon to do so on such motions. It is, however, obviously different with reviewing courts, since they know, and can know, nothing of the deportment of the witnesses as they give their testimony, which is an indispensable criterion for the determination of the question of the weight which may and should justly be accorded their testimony. Of course, where the testimony upon which a verdict or a finding is based is characterized by such inherent weakness as to justify the conclusion that it is insufficient to uphold the verdict or the finding, then a question of law arises, in which case, as in the case of any other question of law, an appellate court may review it. The case here does not come within that category, there being nothing inherently improbable in the testimony of the plaintiff and his son, the latter being at the time of the alleged execution of the release a minor, with perhaps little, if any, understanding or a clear perception of the legal effect of such transactions as the one involved herein.

There is obviously no ground upon which to sustain the complaint that the court failed to find on the special defense pleaded by the defendant, Miller, said defense involving the setting up of new matter. The above quoted finding is a reply to the objection in this particular.

The judgment is affirmed.

Chipman, P. J., and Burnett, J., concurred.