Amelia Costas Ferrer, etc., et al., Plaintiffs and Appellees-Appellants, *v.* G. Llinás & Co., *S. en C.,* et al., Defendants and Appellants-Appellees.

No. 9285. Argued May 3, 1946.—Decided December 5, 1946.

690

Rafael Hernández Matos for plaintiffs and appellees-appellants. *Luis López de Victoria* and *Arturo Ortiz Toro* for defendants and appellants-appellees.

MR. JUSTICE DE JESÚS delivered the opinion of the court.

This is an action for the nullity of a foreclosure proceeding and other relief. Plaintiff obtained from the Banco Crédito y Ahorro Ponceño, Yauco Branch, a loan for $3,000. The transaction was carried out on May 1, 1928 secured by G. Llinás & Co. whereupon the plaintiff on that same day issued a note for said amount to become due on November 1, 1928 with interest at an annual rate of 10 per cent. Plaintiff only received $2,850 as the bank discounted the interest until November 1, 1928 in advance. The day after receiving the loan the debtor agreed with the surety that the latter would pay to the Bank the note for $3,000 at maturity and would also loan her money up to the amount of $4,000 for financing, mentioned hereafter. On that same day, on May 2, 1928, the debtor executed a deed before Notary L. Yordán Dávila wherein she confessed that prior to the date of the execution she had received from G. Llinás & Co., *S. en C.*, a loan for $4,000 in several instalments and in security of said loan and of $500 for interest and $300 for attorney's fees

and costs, she mortgaged a farm located in the ward of Co-
llores of Juana Díaz. It was stated in the deed that the
amount mortgaged would bear interest at 10 per cent from
the date of its execution until full payment and that in the
event of default either in the payment of the principal or of
interest the amount due would also bear interest at 10 per
cent annually. It was likewise agreed that the $4,000 would
be paid as follows: In December, 1928 the amount of $2,000
and interest thereon and in December of the next two years,
$1,000 with interest.[1]

The debtor being in default as to the first installment,
G. Llinás & Co., S. en C. instituted a summary foreclosure
proceeding on July 19, 1929 in order to collect said instal-
ment and interest. In the complaint it claimed $2,000 as
principal, $270 as interest (on $4,000 from May 2 to December
31, 1928) plus $125.48 for default interest on $2,270 from
January 1 to July 19, 1929, at which time the proceedings
was filed, in all $2,395.48 plus $300 for costs and attorney's
fees. The proceeding culminated with the judicial sale of the
farm to Jorge Llinás Morell, partner of the creditor firm,
for the amount of $100[2] which he delivered to the marshal
foreclosure proceeding, ordering the restitution of the prop-
at the auction on September 11, 1929, and ever since it has
been in his possession.

Relying on several of the alleged grounds for nullity,
among others, that the farm was sold to pay the creditor
certain amounts which Amelia Costas Ferrer did not owe
and consequently could not be secured by mortgage, on March
16, 1945, the lower court rendered judgment annulling the
erty to the plaintiff and adjudging the defendant severally

---

[1] The mortgage deed contains other conditions which we shall not mention
as they are immaterial for the purposes of this opinion.

[2] As part of the price the purchaser also bound himself to pay to the Federal
Land Bank of Baltimore a first mortgage on the farm for the amount of $7,500
which had been loaned for 20 years at an annual interest of 6 per cent plus two
additional credits of $1,125 for interest and $500 for costs, disbursements, and
attorney's fees, respectively.

692

to pay the fruits yielded or that might have been yielded and ordering the plaintiff to pay in turn the amount of the mortgage credit with interest and the other amounts which defendants were entitled to recover.[3] After deducting these amounts, defendants were ordered to pay $13,659.88 for fruits and to return to the plaintiff 75 shares of the Federal Land Bank of Baltimore which the latter had bought from said Bank when she received the loan for $7,500 which she later indorsed to Jorge Llinás.

I

■ In considering the alleged ground for nullity which consists in having collected amounts which were not secured by mortgage, we must keep in mind that although in the mortgage deed the debtor admitted that she had received several installments amounting to $4,000, both the deed and the answer to the complaint reveal that this amount includes the $3,000 evinced by the note that G. Llinás & Co., S. en C., was bound to pay on behalf of the debtor at its maturity on November 1st, 1928,[4] and that the $1,000 which defendants

---

[3] We shall refer to these amounts hereafter.

[4] Notwithstanding this admission, clause 11 of the same deed stated:

"Eleventh: It is stipulated and agreed by the parties hereto, for a proper understanding, that the creditor 'G. Llinás & Company, S. en C.', by virtue of the foregoing statements, and of the mortgage executed therein, binds itself to pay to the bank at maturity, the note for three thousand dollars signed by Doña Amelia Costas Ferrer, through her attorney in fact who appears in her name, Don Alvaro Santaella, in favor of Don Carlos Pierantoni, which will be due on November first of the current year 1928, which note is secured by said partnership G. Llinás & Company, S. en C., which partnership hereby releases the aforesaid Doña Amelia Costas Ferrer and Don Carlos Pierantoni from all responsibility of payment of said note and 'waives its right to any claim."

Likewise paragraphs 7 and 8 of the answer read as follows:

"Seventh: Of the seventh paragraph of the complaint the defendants accept that G. Llinás and Company, S. en C., agreed with the plaintiff to assume the debt of $3,000 owed by the plaintiff to the Crédito y Ahorro Ponceño, Yauco Branch, and to loan her the amount necessary to raise her unsecured debt up to $1,000 thus increasing the amount of plaintiff's debt to G. Llinás & Company, S. en C., to $4,000 with interest thereon at 10% annually;" . . .

"Eighth: Answering paragraph 8 of the complaint, defendants admit that on May 2, 1928, Doctor Alvarado Santaella Costas, son of plaintiff therein and

alleged had been delivered for financing included the $620.18 which is the total amount of ten checks [5] which plaintiff received from G. Llinás & Co., *S. en C.* for said purpose.

Although plaintiff admitted in her complaint that in addition to the $3,000 of the note she had received the $1,000 corresponding to the financing, in the course of the trial she introduced evidence without objection tending to prove that she had only received for financing the amount of $620.18, which is the total amount of the checks described under footnote 5, and that upon executing the mortgage deed she owed G. Llinás & Co., *S. en C.*, no other amount. Consequently, she asked permission to amend her complaint in order to conform it to the evidence. In this connection, defendant Jorge Llinás, called as plaintiff's witness, testified that when the mortgage deed was executed the plaintiff herein was

her attorney in fact, and Jaime Castañer Garau as managing partner of G. Llinás & Company, *S. en C.*, executed deed No. 32 before Notary Luis Yordán Dávila embodying the agreement set forth in the aforesaid seventh averment and to secure with a second mortgage on said property the payment of said $4,000 plus interest thereon; and that Mr. Alvaro Santaella Costas, the attorney in fact, admitted that his principal owed to G. Llinás & Company *S. en C.* the amount of $4,000; they deny that she had not actually received from G. Llinás & Company, *S. en C.*, said amount for she received it in the manner agreed upon and set forth in the preceding averment, that is, $3,000 which G. Llinás & Company, *S. en C.*, bound itself to pay for plaintiff herein to the Crédito y Ahorro Ponceño, Yauco Branch, plus any balance existing of the unsecured debt of plaintiff herein plus the amount delivered to bring said debt to the amount of $1,000.''

[5] The following is a statement of the aforesaid checks with their respective amounts and dates of issuance:

| | |
|---|---:|
| ''On July 31, 1928 | $50.00 |
| On August 9, 1928 | 50.00 |
| On August 16, 1928 | 50.00 |
| On August 22, 1928 | 75.00 |
| On August 30, 1928 | 75.00 |
| On August 30, 1928 | 115.18 |
| On Sept. 7, 1928 | 80.00 |
| On Sept. 20, 1928 | 50.00 |
| On Sept. 24, 1928 | 42.00 |
| On Sept. 26, 1928 | 33.00 |
| Total | $620.18'' |

owing to G. Llinás & Co., *S. en C.,* the amount of $695 proceeding from a former financing account plus $75 which it had delivered to Dr. Santaella as plaintiff's attorney in fact. Dr. Santaella and Carlos Pierantoni, on the contrary, testified that the plaintiff herein owed nothing to G. Llinás & Co. *S. en C.* prior to the date of the mortgage deed. The lower court, upon weighing the evidence, gave no credence to Jorge Llinás and found that when the proceeding was filed, plaintiff's debt amounted to $3,620.18 as principal, that is, the $3,000 belonging to the note plus $620.18 which was the amount of the ten checks listed in footnote 5.

The defendants contend that the lower court erred in finding that when the foreclosure proceeding was filed, the mortgagor owed to the creditor the amount of $3,620.18 only, and in failing to hold that the $4,000 were completed with the $695 and the above mentioned check for $75. They accept nevertheless that the $620.18 is included in the amount of $1,000—which they alleged to have delivered for financing. If to the $695 proceeding from the alleged former financing debt we add the $620.18 and the $75 above mentioned, we shall readily see that the amount which according to the defendant, was delivered for financing should have amounted to $1,390.18 and if to this amount we add the $3,000 of the note, the result would be that at the end of September, 1928 [6] the plaintiff herein would have been owing to the mortgagee the total amount of $4,390.18, that is, $390.18 in excess of the mortgage security.

After examining the conditions set forth in the mortgage deed and the behavior of G. Llinás & Co., *S. en C.,* in its transactions with the debtor, revealing extraordinary care in the protection of its property, it is hard to believe that the creditor delivered the amount of $390.18 in excess of the mortgage security. It will suffice to say that the mortgagee, not being satisfied with the security afforded by the mortgaged

---

[6] The last check for financing is dated September 26, 1928.

property, insisted in adding a condition to the mortgage deed, by virtue of which the debtor was bound to deliver to the mortgagee the coffee crop which might be produced, thereby increasing the security with the proceeds of the crop and positively forbidding the debtor to sell the crop to any other person who might probably offer a better price; it was further stated in the deed that if the debtor sold the property, the whole debt would *ipso facto* become due and the creditor would be in a position to foreclose it; and that any delay in the payment of one installment plus the accrued interest should not be understood as an extension of the maturity date and lastly that on the day of the auction Jorge Llinás, a partner of the creditor, went to the farm and attached within the same proceeding a small number of cattle which plaintiff herein had there. The aim of this attachment was to apply the proceeds of the cattle to the deficit which resulted from the sale of the mortgaged property. All these circumstances and the fact that the defendant partnership, who brought the books to court in obedience to a subpoena *duces tecum*, did not present them in evidence in order to prove the debt of $695, were undoubtedly considered by the judge in the weighing of the evidence. We are not convinced that the ruling of the court as to this matter is erroneous.

■ Inasmuch as at the time the foreclosure proceeding was filed plaintiff herein—according to the findings of the court—only owed to the defendant $3,620.18 for the principal amount and in the foreclosure proceeding interest was collected on the amount of $4,000,[7] as principal, it is clear that this proceeding was instituted to recover an amount in

---

[7] Defendants presented in evidence several letters from G. Llinás & Co., S. en C., and the answers from Carlos Pierantoni, tending to show that the plaintiff herein accepted that she owed Jorge Llinás the amount of $4,000, but since defendants did not succeed in proving that Pierantoni was attorney in fact of Amelia Costas Ferrer, these letters were only admitted in order to contradict Pierantoni in so far as he testified that when the foreclosure proceeding was instituted G. Llinás & Co., S. en C., had not taken steps to collect from the debtor.

excess of that owed by the plaintiff and secured by the mortgage. Consequently the foreclosure proceeding became void on that ground, *Torres* v. *Fernández*, 65 P.R.R. 584; *Figueroa* v. *Boneta*, 58 P.R.R. 811; *Vázquez* v. *Gutiérrez*, 52 P.R.R. 162; *Martorell* v. *Crédito y Ahorro Ponceño*, 42 P.R.R. 632; and *Santos* v. *Crédito y Ahorro Ponceño*, 41, P.R.R. 934.

Moreover, we have pointed out that the mortgaged property was sold in order to pay the first installment of $2,000, $270 for interest (on $4,000 from May 2 until December 31, 1928) plus $125.48 for default interest at 10 per cent on $2,270 from January 1, to July 19, 1929, date of the filing of the foreclosure proceeding, plus $300 for attorney's fees. Going over the operation that the creditor had to make in order to compute the interest from May 2 to December 31, 1928,[8] we shall readily see that the creditor assumed that the $4,000 secured by the mortgage had been received in full by the debtor on May 2, 1928 and that it did not deduct the $150 of interest on the note of $3,000 which the debtor paid to the Bank in advance upon receiving the loan. They likewise overlooked that the amount of $620.18, which is the sum of the checks listed in footnote 5, was not received by the debtor on May 2, 1928. It appears from the checks that the debtor received $50 on July 31, 1928, $365.18, in diverse installments, during the month of August and $205 on different days of September, 1928. This being so, how could the creditor collect interest since May on the amount of $620.18 which he delivered several months after that date? The error in computing the interest on $620.18 from May 2, 1928, until December 31, 1928, necessarily resulted in that the creditor collected interest in excess of what the debtor owed, and that fact would be sufficient to affirm the judgment of the lower

---

[8] The interest on $4,000 at an annual rate of 10 per cent from May 2 to December 31, 1928, that is, 7 months and 29 days, amounted to $265.50. It should be noted that the creditor erred by the amount of $4.50 in computing the interest and it was so admitted in its brief.

court annulling the foreclosure proceeding. *Torres* v. *Fernández, supra; Figueroa* v. *Boneta, supra; Vázquez* v. *Gutiérrez, supra; Martorell* v. *Crédito y Ahorro Ponceño, supra;* and *Santos* v. *Crédito y Ahorro Ponceño, supra.*

## II

■ The defendants set up certain defenses which we shall presently discuss. The first one is to the effect that defendant Jorge Llinás Morell obtained the property by prescription because he had held it as owner, publicly, peacefully, and uninterruptedly from September 11, 1929, without having being absent from Puerto Rico. This being so, since the complaint seeking the nullity of the foreclosure proceeding was filed on August 7, 1941, at that time more than twelve years had elapsed since the defendants came in possession of the property. Since his possession was public, peaceful, uninterrupted, and with just title,[9] this lapse of time would have been sufficient to acquire the property by ordinary prescription if his possession had been in good faith. But in the instant case, defendants did not act in good faith. Jorge Llinás himself testified that when the mortgage deed was executed, he acted as managing partner of the creditor and that later he became a partner and was perfectly aware of the business transactions between G. Llinás & Co., *S. en C.,* and Amelia Costas until the property was adjudicated to him. In view of these circumstances, the lower court did not err in dismissing the plea of prescription.

■■ The second defense, that is, that defendant Jorge Llinás was not aware of the defects of his title and conse-

---

[9] The deed of sale executed by the marshal constituted a just title because said deed legally sufficed to transfer the ownership of the property—Section 1852 of the Civil Code 1930 ed. The title is likewise true and valid (§ 1853, of the Civil Code) because the instant sale is not simulated, and because the deed was not invalidated by lack of capacity in the marshal or the purchaser or because the contract did not meet the requirements provided by § 1213 of the Civil Code. Manresa, *Comentarios al Código Civil Español,* vol. 12, p. 839 *et seq.*

quently that he is a third person within the provisions of the Mortgage Law and the Civil Code of Puerto Rico, has already been discussed in passing upon the first defense. The third defense to the effect that plaintiff herein ratified and confirmed, by her conduct, the summary foreclosure proceeding, is likewise untenable. The fact that plaintiff did not prevent Jorge Llinás, after the adjudication of the property, from making payments on the mortgage of the Federal Land Bank of Baltimore; the fact that she did not pay any amount whatsoever after losing the property; and the fact that the plaintiff in order to prevent G. Llinás & Co., S. en C., from taking other property belonging to her so as to make up the deficiency of the judgment, should convey to Jorge Llinás the certificate of 75 shares of stock of the Federal Land Bank of Baltimore which she had as owner of the mortgaged property, do not constitute a confirmation of a nonexistent proceeding such as was the summary foreclosure. But assuming that this proceeding could have been ratified, from that fact alone the intention to confirm does not arise. Finally, the contention that the action for nullity of the foreclosure proceeding was barred because more than four years elapsed since the termination of this proceeding is untenable. This suit does not seek to avoid a voidable contract. The action brought is directed against a proceeding which has no legal existence.

### III

██ Having upheld the judgment in so far as it annulled the foreclosure proceeding and ordered the restitution of the farm with the return of the fruits yielded or that should have been yielded, we must now determine whether the lower court erred in fixing the value of said fruits.

The fruits which, according to the judgment, should be returned by the defendants are those yielded by the sugar cane, the coffee, and the oranges.

## Sugar Cane

As net proceeds of the sugar cane plaintiff herein claimed in her original and complementary complaint the amount of $40,600. The court granted $22,557.82.[10] In order to reach this result the court took into account the liquidations of the cane rendered by the sugar mills to Jorge Llinás[11] from 1930–31 until 1943, which, including $8,009.26 which Jorge Llinás received as benefit payment under the Costigan-Jones Act and the Sugar Act of 1937, amounted to $77,025.98. But since in 1930–31 Jorge Llinás suffered losses in the cane amounting to $1,499.44 and the necessary expenses for such a gross production amounted, according to the findings of the court, to $52,967.72, by adding the two amounts we have a total of $54,467.16 and by deducting this amount from the gross profit, that is, from $77,025.98, it follows that the net proceeds of the sugar cane from 1930–31 until 1942–43 amounted to $22,558.82. It seems pertinent to say that in order to fix the expenses for production at $52,967.72, the court relied on the testimony of Francisco Colón Moret, plaintiff's expert witness. Defendants challenged the court's finding on the ground that it should have given no credence to this testimony because it was based on the opinion of the expert as to what the production of the cane in question should have cost considering the land, the amount of cane cultivated each year, wages, fertilizers, etc. and not on precise records of what was actually spent. The mere fact that the expert could not base his testimony on precise records does not make the evidence inadmissible. The weight of this testimony shall depend particularly upon the credit which the court gives to the expert, considering his experience in the matter,[12] or his

---

[10] The correct amount should be $22,558.82.

[11] The liquidations corresponding to the first three years were issued in the name of G. Llinás & Co., S. en C.

[12] It appears from the evidence that Francisco Colón Moret has been engaged in the cultivation of cane since 1924; that he has owned farms and has cultivated them; that he has been Chief of Cultivation and Agricultural Consulting Agent

opportunity to render an opinion with knowledge of the facts, and his demeanor while testifying. 2 Wigmore, Evidence (3rd ed. 1940), § 677. We shall turn to the reasons that the court had for giving credence to Colón Moret.

"As to the cane grown in the farm, we have based our computation of tonnage and selling price, exclusively on the data revealed by the liquidation rendered by the sugar mills and which liquidations were under the custody of defendant himself, Llinás Morell, and which he presented to the court by virtue of a 'subpoena duces tecum.' Since said codefendant did not introduce in evidence the pay rolls of the various years, the bills for fertilizer and other materials used for the planting, cultivation and harvesting of cane, in order to make an estimate of the expenses necessary to said operations we shall rely on the lengthy and detailed testimony of expert Francisco Colón Moret, whose wide professional experience and studies in the matter were accepted by defendant himself. The testimony of Jorge Llinás Morell partly evasive shed no light as to such expenses, being in a better position than anyone else, inasmuch as he should have been familiar with all the expenses and disbursements necessary for the cultivation. For the benefit of codefendant Jorge Llinás Morell himself we do not take into consideration the annual expenses in cane plantations which he reported *under oath* in his "Declaration of Pay Roll" to the State Insurance Fund, during several years, and which compare with the expenses given by expert Colón Moret as follows:

| Year | Declaration of Llinás | Testimony of Colón Moret | Difference |
|------|------------------------|---------------------------|------------|
| 1940–41 | $2,781.00 | $4,825.00 | $1,044.00 |
| 1939–40 | 1,796.58 | 6,313.51 | 4,516.92 |
| 1938–39 | 1,629.86 | 4,211.53 | 2,581.67 |
| 1937–38 | 1,631.43 | 4,711.36 | 3,079.93 |
| 1936–37 | 1,478.27 | 4,743.51 | 3,265.24 |
| 1935–36 | 2,052.39 | 3,151.75 | 1,099.36 |
| Total | | | $15,587.12 |

· ‹ ※ ※ ※ ※ ※ ※ ※

in several sugar mills among them, Mercedita, Yabucoa, Pasto Viejo, Coloso and Lafayette; that he has been engaged in those activities for 24 years and is familiar with the cost and production of sugar cane, especially in areas similar to that where the farm which has given rise to this action is situated.

"So there is a substantial difference of $15,587.12, *between the expenses reported under oath* by Jorge Llinás Morell and those stated by expert Francisco Colón Moret.

"It is worthy of note that in the payroll reports that said codefendant made to the State Insurance Fund before Notary Luis López de Victoria, *after having been summoned in this action for nullity,* for the year 1942–43 (Exhibit 30, Plff.) for cane plantations, he reported: $9,913.97, when in this year he planted 58 acres of *ratoons* and failed to harvest about 20 or 25 acres of cane; and for the year 1941–42 (Exhibit 31, Plff.) he reported $6,973 for the cultivation of *ratoons;* in the verified report which he made a month before being summoned, he only accounts for $2,781 for those same 58 acres of cane. Notwithstanding the fact that he incurred in such an extraordinary expense for the year 1941–42, he also stated, under oath, in the first paragraph of his answer to the Supplemental Complaint that he had a profit of $32.86 from the cane."

## Coffee

For the coffee the court granted the plaintiff the net amount of $7,485.57, which consists of the following: $6,960.57 net proceeds of the coffee from 1930 until 1943, plus $525 as subsidy which the coffee planters received from the Government during the years 1939–41. Referring to the proceeds obtained from the coffee, the lower court said:

"Since the year 1930 codefendant Jorge Llinás Morell has planted from 15 to 20 acres of coffee, that is, an average of 17½ acres; because of the hurricane the production was low; in 1930, 15 hundredweights and 36 pounds of coffee; and in 1931, 39 hundredweights and 30 pounds. (Answer to the Complaint, fourth paragraph, second cause of action.) Later the production became normal undergoing some changes characteristic of the cultivation of this product; the average production in that area is 3 hundredweights per acre (testimony of Tiburcio Lloréns) and with a special scientific cultivation it might yield 6 hundredweights per acre. (Testimony of Juan Adrover, defendant's coffee expert.) The average expense per hundredweyght of coffe from its cultivation to its marketing is $8.50. (Testimony of Tiburcio Lloréns Torres, who was a coffee producer for more than 40 years in that coffee area; he had the farm in question under a lease from a former owner, his brother Luis Lloréns Torres, and his coffee plantations are adjacent to this farm and for

many years he bought its orange crop.) The coffee that was yielded or should have been yielded by said farm, from 1930 until 1943, both years inclusive, taking into account an average crop of 52.50 hundredweights per year and its market price as testified to by Ramiro Colón and Jorge Llinás Morell himself, is as follows:

| Year | Hundredweights | Price | Proceeds | Expenses | Profit |
|------|----------------|-------|----------|----------|--------|
| 1930 | 15. 56 | $30. 00 | $466. 80 | $132. 26 | $334. 54 |
| 1931 | 39. 30 | 30. 00 | 1179. 00 | 434. 05 | 744. 95 |
| 1932 | 52. 50 | 17. 67 | 927. 68 | 446. 25 | 481. 43 |
| 1933 | 52. 50 | 16. 74 | 878. 85 | 446. 25 | 432. 60 |
| 1934 | 52. 50 | 18. 25 | 958. 13 | 446. 25 | 511. 88 |
| 1935 | 52. 50 | 13. 11 | 688. 28 | 446. 25 | 242. 03 |
| 1936 | 52. 50 | 14. 84 | 779. 10 | 446. 25 | 332. 85 |
| 1937 | 52. 50 | 15. 71 | 824. 78 | 446. 25 | 378. 53 |
| 1938 | 52. 50 | 17. 55 | 921. 38 | 446. 25 | 475. 13 |
| 1939 | 52. 50 | 15. 74 | 826. 35 | 446. 25 | 380. 10 |
| 1940 | 52. 50 | 18. 40 | 966. 00 | 446. 25 | 519. 75 |
| 1941 | 52. 50 | 18. 76 | 984. 90 | 446. 25 | 538. 65 |
| 1942 | 52. 50 | 23. 50 | 1233. 75 | 446. 25 | 787. 50 |
| 1943 | 52. 50 | 23. 75 | 1246. 87 | 446. 25 | 800. 63 |

$6, 960. 57

"During the years 1939, 1940, and 1941 the coffee producers received Government subsidies; in the first year they received five cents per pound produced; in the second, 3 cents; and in the third, 2 cents. The subsidy received during those three years, based on an annual average production of 52.50 hundredweights amounts to $525, which codefendant Jorge Llinás Morell received or should have received, making $7,485.57 the net profit of the coffee produced by him in said property."

## Oranges

As orange proceeds, the court granted to the plaintiff during the above-mentioned years the amount of $4,320 plus $262.50 which Jorge Llinás received for soil conservation, that is, $4,582.50.

In support of this finding the court said:

"The San Felipe hurricane did little damage to the orange plantation in this farm. (Testimony of Tiburcio Lloréns.) The oranges

are of good quality and they are sold when the market price is high, that is, in February and thereafter; ordinarily the crop is sold while the fruit is on the trees and the purchaser pays for the gathering and transportation; the amount spent in cleaning and pruning the orange orchard ranges from $40 to $50; until 1930 the average annual production was 150,000 oranges; from 1930 to 1940, 100,000; in 1940 there was an offer of $350 for the harvest and it was rejected; they were sold for $3 to $5 per thousand; in 1944 the crop was sold for $500; the oranges of this orchard are sold together with those from the adjacent orchard owned by G. Llinás & Company, *S. en C.*, which represents one-sixth of the production of both properties; that is, this farm produces five-sixths, and the other, one-sixth (testimony of Tiburcio Lloréns, Jorge Llinás Morell, and Marcelino Anadón). The oranges grown in this property, excluding those of the other farm, averaged in 1944 a net production of $288, after deducting the annual expense of cleaning and pruning (testimony of Jorge Llinás Morell); from 1930 until March 1944, they yielded or should have yielded net proceeds of $4,320.

"For soil conservation codefendant Jorge Llinás Morell has received from the Agricultural Conservation Program the amount of $262.50. (Answer to the complaint, paragraph 7(e), 1st cause of action.)".

In our opinion, the lower court did not err in granting plaintiff $22,558.82 for the sugar cane, $7,485.57 for coffee, and $4,582.50 for oranges. The whole amount is $34,626.89. However the lower court in adding these three items granted for the fruits, stated that the total was $35,884.67, when as a matter of fact the amount is $34,626.89. This being so, the conclusion of the lower court on this point should be modified accordingly.

## IV

Since by annulling the foreclosure proceeding, the mortgage credit is re-established, we shall first find out the amount owed by the plaintiff to defendant G. Llinás & Co., *S. en C.*:

As principal . . . . . . . $3,620.18

Annual interest at 10% on $3,000 from November 1st
until December 1st, 1928, . . . . . 50.00

Interest on the amounts represented by the 10 checks at

the rate of 10% from the time they were respectively delivered to the plaintiff until December 31, 1928, . 20.90

Interest at 10% on the principal loaned, that is, $3,620.18 from January 1st, 1929, until the rendition of the judgment on March 16, 1945, that is, 16 years, 2 months and 15 days . . . . . . . 5,867.73

Total amount owed by plaintiff to G. Llinás & Co., *S. en C.*, for principal and interest . . $9,558.81

And since he who receives the fruits produced by a possessor, even if his possession be in bad faith, ought to reimbursed the latter for the expenses necessary for the production thereof, § 382, Civil Code, as well as the expenses for the preservation of the thing possessed, § 384, Civil Code, we must now determine the amount that plaintiff is bound to pay for said two items to the possessor, Jorge Llinás Morell:

For taxes paid on the property . . . . $1,877.36

For principal and interest paid on the mortgage of $7,500 to the Federal Land Bank of Baltimore until October 25, 1945 . . . . . . 7,617.26

Expenses in the construction of roads for the farm . 3,170.60

Total amount owed by plaintiff to Jorge Llinás Morell . . . . . . $12,665.22

Since the plaintiff is entitled to receive from defendants *in solidum* the amount of $34,626.89 and the latter should receive from the former the amount of $22,224.03—that is, $9,558.81 G. Llinás & Co., *S. en C.*, and $12,665.22 Jorge Llinás —after deducting these amounts, plaintiff is entitled to receive from defendants the amount of $12,402.86.

V

■ Defendants also contend that the lower court declared null the agreement of anatocism—taking interest on interest —besides having adjudged them to pay attorney's fees in the amount of $5,000.

It was alleged in the complaint that G. Llinás & Co., S. en C., was a commercial partnership and that fact was expressly accepted in the answer. It being admitted that the defendant G. Llinás & Co., S. en C., is a commercial partnership, the loan made by the latter to the plaintiff is of a commercial character pursuant to § 229 of the Code of Commerce, which in so far as pertinent provides:

"Section 229.—A loan shall be considered commercial when the following conditions are present:

"1. That one of the contracting parties is a merchant.

"2. . . . . . . .

Since the loan made by G. Llinás & Co., S. en C., to the plaintiff is a commercial one, it is governed by § 235 of the Code of Commerce, which reads as follows:

"Interest which has fallen due and has not been paid shall not earn interest. *The contracting parties* may, however, capitalize the net interest which has not been paid, which, as new principal, shall earn interest," (Italics ours.)

But since in the present case the contracting parties have at no time capitalized the net interest which is unpaid, we must conclude that the lower court did not err in not granting to the creditor the compound interest.

Defendants likewise assign as error the imposition of $5,000 as attorney's fees. It appears from the record that plaintiff's attorney conducted the case with remarkable ability and his actions during the trial revealed that he made a careful study of the questions involved. Considering the nature of the questions raised and all the surrounding circumstances, we are of the opinion that this item should be reduced to $2,500 which we deem reasonable.[13]

---

[13] The defendants assign other errors, among them that the amounts received as subsidy belong to Jorge Llinás and not to the plaintiff, even if it is decided that he is a possessor in bad faith, which errors we shall not discuss because in our opinion they lack merit, and their discussion would unnecessarily lengthen this opinion.

## VI

█ The plaintiff in turn assigns as error the failure of the court to order defendants to pay triple damages. She bases her contention on the fact that when the farm was adjudicated to defendant Jorge Llinás Morell, the latter took possession thereof without the court having issued an order of possession to the marshal. In fact, the evidence showed that such an order was not issued but this notwithstanding, the marshal, although without a writ of possession, went with the defendant to the farm and there made delivery of possession. Plaintiff invokes § 281 of the Code of Civil Procedure [14] but this statutory provision is inapposite. Said Section confers upon the lower court discretionary power to impose the penalty of triple damages when defendant causes damage by reason of forceful possession or detainer of any building or cultivated area. *Gwin* v. *Goldman* 134 P. (2d) 915 (Cal. 1943); *San Francisco & Suburban Home Bldg. Society* v. *Leonard,* 119 Pac. 405 (Cal. 1911); 12 Cal. Jur. 629, § 32. We have already seen that the defendant peacefully took possession of the farm and the record does not show that he was even disturbed in the enjoyment thereof until the filing of the instant suit for the annulment of the foreclosure proceeding. Under the attendant circumstances, we cannot agree that the lower court improperly used its discretion in refusing to grant said damages.

█ Plaintiff complains of the fact that the court granted interest on the amounts represented by the 10 checks from their rsepective dates of issuance. She grounds her theory in that, in her opinion, the amount of $620.18 did not constitute a net amount and consequently did not earn interest until the date of the judgment which decreed the nullity of the fore-

---

[14] Section 281, identical to § 735 of the California Code of Civil Procedure, reads thus:

"If a person recovers damages for a forcible or unlawful entry in or upon, or detention of, any building or any cultivated real property, judgment may be entered for three times the amount at which the actual damages are assessed."

closure proceeding. We differ with plaintiff. She obligated herself to pay interest on that part of the debt given for financing as well as on the $3,000 of the note. If instead of delivering the $620.18 in divers installments, plaintiff had received the check for $620.18 on May 2, 1928, she would not allege that that amount constitutes an unliquidated debt, and therefore, that it did not bear interest. The fact that it was delivered in divers installments does not make the installments less certain, and they should earn the stipulated interest from the time they were received. The cases cited by the plaintiff in support of her thesis are damage cases, wherein the amount to be paid by the defendant was not determined until the court rendered judgment fixing the amount of the damages.

 Plaintiff further assigns as error the granting of interest to the defendants up to the rendition of the judgment and the failure to grant fruits to the plaintiff before 1930–31 or subsequent to 1943. Pursuant to § 384 of the Civil Code, the possessor in bad faith shall pay for the fruits collected and for those which the lawful possessor might have collected;[15] but said fruits must be proved and in the instant case the plaintiff merely proved the fruits received from 1930–31 until 1943, and we find no evidence of the fruits collected or which might have been collected before 1930–31 and subsequent to 1943. The case of *Pontón* v. *Sucrs. of Huertas González*, 46 P.R.R. 764, contemplates special circumstances

---

[15] The meaning of *fruits that might have been collected* is explained by Manresa in the following terms:

"The fruits *that might have been collected* are those that might have been yielded by the thing. Goyena, in commenting on § 431 of the Code Project of 1851, said that the term included the fruits that the owner or possessor with a better title might have made the thing yield as well as those that the defeated possessor might have enjoyed, although the owner might not have been able to produce them. Section 455 of the present Code does not go that far. It merely refers to the fruits that the lawful possessor, that is, the possessor with a better title in whose favor judgment was rendered, might have collected if the thing had been in his possession. It should be noticed that the section speaks of fruits that might have been collected and not of those that

which are not present in the case at bar. There plaintiffs sought the annulment of the mortgage foreclosure proceeding brought against them by the defendants and prayed for the value of the property sold, but they did not claim the value of the fruits collected or that might have been collected. The evidence revealed that the farm was mortgaged for $4,500 and that the defendants subsequent to the adjudication of the farm, sold it for $8,500 and immediately thereafter began to enjoy the benefits of that amount. Upon deciding the counterclaim of the defendant, this court held:

"There is no doubt whatever that, after the annulment of the summary foreclosure proceeding the debt secured by the mortgage subsists. It is evident that the defendant is entitled to collect the $4,500 he lent to the plaintiffs, once it has reimbursed to them the value of the property since the property itself can not be restored. What we do think is that it is not entitled to recover the costs and attorney's fees or the interest, as it must not be overlooked that the fees pertained to a void proceeding and that the property was improperly awarded to it and was sold by it for $8,500 from which amount it has been benefiting since the receipt of the same. To accord it such right would be to grant it a double profit, since it was adjudged to reimburse the value of the property, without fruits or interest. The provision should be modified so as to recognize the defendant's right to recover from the plaintiffs the sum of $4,500, which should be deducted by the defendant from the $8,500 that it must pay to the plaintiffs." (pp. 771-2).

And in *Crespo* v. *Schluter,* 58 P. R. R. 833, also cited by the plaintiff, this court held that the situation was similar to the *Pontón* case, *supra,* and applied the same doctrine with

---

might have been yielded, which may be the same thing but which makes the provision somewhat broad, rendering it applicable to natural as well as to civil fruits. Rents, pensions, and interest which due to possessor's negligence can not be recovered are undoubtedly fruits which might have been collected. Fruits lost by his own fault before having collected them are also fruits which might have been collected. Likewise if he planted ten when he should have planted twenty, if he received fifteen when thirty was the average yield of the crop in a given year, etc. In order that they may be considered as fruits that might have been collected it is necessary that it should be through the fault, lack of diligence, or negligence of the possessor." (Manresa, *Comentarios al Código Civil Español,* vol. 4, pp. 259 and 260.)

respect to interest. In the present case plaintiff claimed fruits and presented evidence in support of her claim, but for reasons which the record does not reveal she did not seek to recover the fruits collected or that might have been collected prior to 1930–31, nor subsequent to 1943. We see no reason whatsoever why defendant should be precluded from obtaining the interest on the principal owed from the time it was delivered to the defendant until the judgment was rendered.

## VII

 We shall now consider the appeal taken from the order approving the memorandum of costs filed by the plaintiff. This appeal is confined to that part of the order which denied the whole item of $500 claimed as fees for the expert Francisco Colón Moret for his attendance in court for three days as plaintiff's expert. The case of *Durán v. Durán,* 55 P.R.R. 615, is invoked. We held in effect that the lower court did not err in approving an item of $100 as fees for the handwriting expert. Subsequent to the *Durán* case, *supra,* we decided *Colón v. Central Cambalache* 65 P.R.R. 145, where we made a study of § 327 of the Code of Civil Procedure,[16]

---

[16] Insofar as pertinent, § 327 of the Code of Civil Procedure, as amended, reads thus:

"The party in whose favor any final judgment or resolution is rendered shall be allowed costs, which shall comprise the following disbursements.

"1. Any amount paid to the secretary of the court or to any district marshal;

"2. Disbursements for such authentic copies of deeds and certificates of the registry of property or of any other official records as have been admitted in evidence;

"3. Two (2) dollars for each witness and for each day of attendance at court, plus mileage in going from and returning to his residence;

"4. The amount paid to the stenographer of the court for the transcription of any testimony of evidence or proceedings had in open court, if said transcription is ordered by the court;

"5. Five (5) dollars for notary's fees and the fair value of the stenographic work in the taking of any deposition admitted in evidence; and

"6. Any other disbursement which is necessarily made in connection with the proceedings in the case, as the court may deem proper, and which is subject to schedule."

as amended by Act No. 94 of May 11, 1937, reaching the conclusion that the expenses or disbursements especially enumerated in § 327 are the only ones that may be considered as costs. Since experts are witnesses, they are included in subdivision 3 which fixes the amount of $2 as the compensation for each day of attendance at court. It should be noted that apart from this subdivision the experts are included in no other provision, for in order that they could be embraced within the purview of subdivision 6, as sought by the plaintiff, his fees would have to be a disbursement subject to schedule, and it is not so. Consequently, considering expert Colón Moret as a regular witness, and in view of the fact that he attended court during three days, the item of $500 should be reduced to $6 only.[17]

For the reasons stated, the order approving the memorandum of costs in that portion which was appealed, that is, in so far as it denied in whole the item of $500 as fees to expert Francisco Colón Moret, should be reversed and another rendered instead approving said item for the amount of $6. As to the judgment, the same should be modified so as to order the defendants to pay *in solidum* to the plaintiff the amount of $12,402.86 instead of $13,659.89 and to reduce to $2,500 the imposition of attorney's fees; and as thus modified, the judgment is affirmed.

Mr. Justice Snyder did not participate herein.

---

[17] The case of *Durán* v. *Durán*, 55 P.R.R. 615, should be considered overruled insofar as this particular is concerned.